**E-FILED on**   5/26/06

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LINDA RECOTTA,<br><br>            Plaintiff,<br><br>    v.<br><br>RELIANCE LIFE INSURANCE CO.; COHERENT, INC.; MATRIX ABSENCE MANAGEMENT, INC.; THE LONG TERM DISABILITY PLAN OF COHERENT, INC., and DOES 1-10;<br><br>            Defendant. | No. C-05-03886 RMW<br><br>ORDER DETERMINING THE STANDARD OF REVIEW<br><br>**[Re Docket Nos. 14, 19, 22]** |

Plaintiff Linda Recotta moves for an order determining that the standard of review in this ERISA action is *de novo*. For the reasons set forth below, the court determines the standard of review is for abuse of discretion.

**I. BACKGROUND**

Recotta previously worked in accounts payable at defendant Coherent, Inc. She has a history of documented cardiac problems going back to at least 1998. *See* AR 199.[1] Complaining of stress-induced shortness of breath, chest pain, and fatigue, she ceased work at Coherent on

---

[1] The court adopts the parties' use of "AR [page number(s)]" to refer to Reliance's 302-page file on Recotta, docket no. 20.

January 31, 2003.  AR 106.  She applied for short-term disability benefits, which were granted by defendant Matrix Absence Management, Inc.  AR 102-03.  Matrix, however, denied Recotta long-term disability benefits, and this decision was upheld on appeal by defendant Reliance Standard Life Insurance Company.  AR 23-26.  Recotta's suit followed.

## II.  ANALYSIS

Reliance argues that the court must review its denial of benefits under an abuse-of-discretion standard; Recotta contends that *de novo* review is required because of a conflict of interest.  "[A] denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  When the plan confers discretion on the plan administrator to determine eligibility for benefits, courts generally review the denial of benefits for abuse of discretion.  *See id.*  A conflict of interest on the part of the plan administrator can convert review for abuse of discretion into *de novo* review.  *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc.*, 125 F.3d 794, 797 (9th Cir. 1997).  Here, plaintiff concedes that the plan at issue gives Reliance discretion, *see* Mot. at 6, but argues that Reliance's decision to deny her benefits was tainted by a substantial conflict of interest.

An apparent conflict of interest exists where a long-term disability policy is both funded and administered by the defendant.  *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 943 (9th Cir. 1999).  Such an apparent conflict of interest "must be weighed as a factor in determining whether there is an abuse of discretion."  *Tremain v. Bell Indus., Inc.*, 196 F.3d 970, 976 (9th Cir. 1999) (quotation marks and brackets omitted).  "[R]eview in such a circumstance, although still for abuse of discretion, is less deferential."  *Id*. (quotation marks omitted).

"If, however, the program participant presents material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self interest caused a breach of the administrator's fiduciary obligations to the beneficiary, a rebuttable presumption arises in favor of" *de novo* review.  *Id*. (citations and quotation marks omitted).  "The plan then bears the burden of rebutting the presumption by producing evidence to show that the conflict of interest did

United States District Court
For the Northern District of California

1   not affect its decision to deny or terminate benefits." *Id*. (quotation marks omitted).  "If the plan
2   fails to carry this burden of rebutting the presumption," the decision to deny benefits will be
3   reviewed *de novo. Id*.  The Ninth Circuit has found "material, probative evidence" of a serious
4   conflict of interest where there were "inconsistencies in the reasons" given for a denial, *Lang*, 125
5   F.3d at 797, "procedural irregularities in the initial claims process and an unfair appeals process,"
6   *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1110 (9th Cir.1999), or insufficiency of the stated reasons
7   for denial, *Tremain*, 196 F.3d at 977.

8     When an ERISA plan is actually an insurance policy issued and administered by the
9   insurer, the insurer's "dual role as both the funding source and the administrator of the Plan"
10  creates an inherent conflict of interest.  *Lang*, 125 F.3d at 797.  The plan at issue here is a Reliance
11  insurance policy, and Reliance is the funding source.  *See* AR 68.  Though Matrix Absence
12  Management, Inc. initially determines whether a policyholder is eligible for long-term disability
13  benefits, Reliance is responsible for the appeal process and therefore has ultimate decision-making
14  authority.  As such, Reliance has an apparent conflict of interest when it makes benefit eligibility
15  determinations, and this brings Reliance within *Tremain*'s "less deferential" abuse-of-discretion
16  review.  *See* 196 F.3d at 976.

17    Since Reliance has an apparent conflict, the next question is whether plaintiff has presented
18  "material, probative evidence" showing that Reliance acted upon that conflict.  *Id.* at 976.  Recotta
19  argues that two factors indicate Reliance was operating under a conflict of interest serious enough
20  to warrant *de novo* review: (1) Reliance failed to follow its own internal policies when handling
21  Recotta's claim, and (2) the physician retained by Reliance to review Recotta's claim was unduly
22  biased in Reliance's favor.

23  **A.  Internal policies**

24    Recotta points out that Reliance's manual states, "After the initial claim review, a telephone
25  interview with the claimant **should be conducted by the examiner** for each claim within seven to
26  ten days of receiving the claim where possible and appropriate." Folan Decl., Ex. G at 5
27  (emphasis in original).  Recotta states that she does "not recall that anyone from Reliance ever
28  formally interviewed" her.  Recotta Decl. ¶ 10.  Though Reliance's manual qualifies that phone

1 interviews should only be conducted where "possible and appropriate," Folan Decl., Ex. G at 5, it
2 appears that the expectation is that phone interviews will be conducted except in unusual
3 circumstances.  There is no indication that it would have been impossible or inappropriate for
4 Reliance to interview Recotta by phone.  Recotta has shown that Reliance deviated somewhat from
5 its written examination procedure when evaluating her claim.  This alone, though, is not sufficient to
6 constitute a serious conflict of interest under *Friedrich*.

7 However, none of Recotta's other claims on this point are persuasive.  She argues that
8 Reliance should have conducted further investigation of certain points and should have, for example,
9 conducted an independent medical evaluation of her, inquired whether the Social Security
10 Administration had found her permanently disabled, spoken with her treating physicians, and spoken
11 with her co-workers about the duties of her specific position with Coherent.  While Reliance's policy
12 manual does state that claims examiners should "[g]ather all the facts that will help us determine if
13 the claimant meets the definition of disability," Folan Decl., Ex. G at 5, it also states that claimants
14 are "ultimately responsible for providing proof of disability on a timely basis," *id*. at 6.  Furthermore,
15 the policy states that for long-term disability benefits to be paid, she must "submit[] satisfactory
16 proof of Total Disability to" Reliance.  AR 56.  If Recotta felt that Reliance needed additional
17 information to evaluate her claim, the burden was on her to submit such information.

18 **B.  Bias**

19 As an initial matter, the court rejects Reliance's suggestion that the biases of the physicians it
20 hires are irrelevant or may not be imputed to Reliance.  *See* Opp'n at 10-11.  Physician bias could be
21 "material, probative evidence" of a conflict of interest; it would be illogical to disregard a proven
22 bias on the part of a physician reviewing records to assist in a decision whether to grant disability
23 benefits.  The court will therefore consider Recotta's arguments on this issue.

24 Recotta presents an unsigned version of an opinion from Chief Judge Thomas Vanaskie as
25 evidence that the physician Reliance hired to review Recotta's medical records, Dr. Marvin
26 Goldstein, is unduly biased.  *See* Req. Jud. Not., Ex. C.  This order was originally published, *Davies*
27 *v. Paul Revere Life Ins. Co.*, 147 F. Supp. 2d 347 (M.D. Pa. 2001), but Judge Vanaskie ordered the
28 opinion depublished and removed from electronic databases, *Davies v. Paul Revere Life Ins. Co.*,

ORDER DETERMINING THE STANDARD OF REVIEW—No. C-05-03886 RMW
JAH                                                                                    4

1  236 F. Supp. 2d 445 (M.D. Pa. 2002).  Recotta's request to take judicial notice of this opinion is
2  therefore denied.
3      Recotta's other arguments that Goldstein is biased are unpersuasive.  She claims that the facts
4  that he "lives back East in Pennsylvania and has not treated patients for more than a decade" show
5  his bias.  Mot. at 10; *see* AR 214-15.  This hardly seems sufficient to make him unqualified to
6  review medical records, and even if it did, it would not indicate that he would necessarily have a
7  bias in favor of one party or the other.  Other courts have referred to him as The Paul Revere Life
8  Insurance Company's "internal medical consultant," *Mizzell v. Paul Revere Life Ins. Co.*, 118 F.
9  Supp. 2d 1016, 1018 (C.D. Cal. 2000), and "in-house medical consultant," *Rosenthal v. Long-Term*
10 *Disability of Epstein, Becker & Green, P.C.*, 1999 WL 1567863 at *4, (C.D. Cal. 1999), but
11 employment by an insurance company—particularly one other than Reliance—cannot be evidence
12 of a serious conflict of interest without going against *Tremain*'s command that such a situation is
13 only an apparent conflict of interest warranting review for abuse of discretion.  *See* 196 F.3d at 976.
14     Recotta also argues that Goldstein used only information in her file that would support a
15 denial of benefits and ignored other evidence that she was actually disabled, such as that her aortic
16 root enlarged from 3.6 centimeters to 5.0 centimeters between 2000 and 2002.  Comparing
17 Goldstein's report to the information in her file, it does not appear that Goldstein unduly focused
18 only on information that would support a denial of benefits.  While Goldstein's report does not
19 mention Recotta's aortic root enlargement, Goldstein considered a variety of diagnostic tests from
20 over a period of years, such as cardiac catheterizations, treadmill tests, echocardiograms, and
21 physical examinations.  *See* AR 207-09.  Recotta also does not explain how—particularly given
22 that her diagnostic test results had not markedly changed and her cardiologist stated on January
23 29, 2003 that "[s]he is clinically doing well" and that she may or may not be suffering from
24 ischemia, AR 100—a finding of aortic root enlargement compels the determination that she
25 qualified for long-term disability benefits under Relience's plan.
26     That Reliance did not conduct a phone interview of Recotta, by itself, does not constitute
27 "material, probative evidence" that Reliance operated under a serious conflict of interest sufficient
28 to review its decision to deny Recotta long-term disability benefits *de novo*.  As a general matter,

ORDER DETERMINING THE STANDARD OF REVIEW—No. C-05-03886 RMW
JAH                                                                 5

United States District Court
For the Northern District of California

Recotta's arguments do not indicate that the standard of review should be other than for abuse of discretion; rather, her arguments go more to the fact that Reliance may have abused its discretion in denying her claim. The standard of review in this action will therefore be *Tremain*'s "less deferential" abuse-of-discretion review.

### III. ORDER

For the foregoing reasons, the court denies plaintiff's motion and determines that the policy decision at issue will be reviewed for abuse of discretion, subject to the qualification of *Tremain* mandating "less deferential" review.

DATED:     5/26/06

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

Maureen A. Folan          mfolan@ndkylaw.com
Kirsten M. Fish           kfish@ndkylaw.com

**Counsel for Defendants:**

Colleen R. Smith          csmith@hfdclaw.com
Kevin P. McNamara         kmcnamara@hfdclaw.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     5/26/06                    /s/ JH
                                    **Chambers of Judge Whyte**